# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH & OURAY RESERVATION,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY D. MCKEE, T & L LIVESTOCK, INC., MCKEE FARMS, INC, AND GM FERTILIZER, INC.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' ANSWER, SET ASIDE DENIAL OF DEFAULT, AND ENTER DEFAULT JUDGMENT**<br><br>Civil Case No. 2:18-cv-00314<br><br>Judge Clark Waddoups |

Before the court is Plaintiff's Motion to Strike Defendants' Answer, Set Aside Denial of Default, and Enter Default Judgment, (ECF No. 39). As explained below, because the court will allow Defendants' late filing under Rule 6(b)(1)(B), the court denies Plaintiff's Motion.

## Background

On September 6, 2012, Plaintiff file a Complaint against Defendants in the Ute Indian Tribal Court of the Uintah and Ouray Reservation Fort Duchesne, Utah. (*See* ECF No. 2-3 at 29.) On September 4, 2013, Plaintiff filed an Amended Complaint in the Tribal Court. (*See* ECF No. 2-3 at 30.) Plaintiff sued Defendants for "Misappropriation, Theft, and/or Conversion of Water." (Compl. ¶ 13, ECF No. 2 at 5.) Between November 14, 2012, and June 10, 2015, Defendants were represented in the Tribal Court proceeding by John Hancock. (*See* ECF No. 2-3 at 30, 32.)

"The Ute Indian Tribal court held a trial on the matter on July 13, 2015." (Compl. ¶ 17, ECF No. 2 at 6.) "Despite having filed an answer and receiving notice of the trial, Defendants did not participate in the trial." (Compl. ¶ 17, ECF No. 2 at 6.) On August 3, 2015, the Ute Indian Tribal Court entered its Findings of Fact and Conclusions of Law. (ECF No. 2-3 at 28.) On September 29, 2015, the Ute Indian Tribal court entered a Final Judgment for Damages and Permanent Injunction. (*See* ECF No. 2-3 at 57.)

On April 17, 2018, Plaintiff filed its Complaint in this court to "recognize, register, and enforce [the] tribal court money judgment . . . ." (Compl. ¶ 1, ECF No. 2 at 2.) On or around May 24, 2018, John Hancock spoke to Plaintiff's counsel and appears to have requested that Plaintiff grant Defendants an extension of time to respond to the Complaint. (*See* ECF No. 40 at 18.) On May 24, 2018, Plaintiff's counsel sent an email to John Hancock, writing: "The Tribe agrees to a 30-day extension of time from May 29 for the defendants' response. I look forward to working with you." (ECF No. 40 at 19.)

The next day, on May 25, 2019, Plaintiff's counsel received a phone call from a different attorney who stated that the Defendants were considering having him represent them. (ECF No. 40 at 18.) The same day he received this phone call, Plaintiff's counsel wrote an email to John Hancock explaining that Plaintiff had only agreed to a 30-day extension because it believed Defendants had already retained Mr. Hancock. (ECF No. 40 at 18.) Plaintiff's counsel explained that the 30-day extension was conditioned on Mr. Hancock entering an appearance in the case. (*See* ECF No. 40 at 18.) Plaintiff's counsel concluded the email by explaining that Plaintiff may seek entry of default if Mr. Hancock did not enter an appearance before the Answer deadline. (*See* ECF No. 40 at 18.)

On June 4, 2018, Plaintiff filed an "Application and Request for Entry of Default Judgment and Default Judgment." (ECF No. 18 at 1.) This submission was directed to the "CLERK OF THE UNITED STATES DISTRICT COURT, DISTRICT OF UTAH." (ECF No. 18 at 1 (emphasis in original).) In this submission, "Plaintiff request[ed]," "[p]ursuant to Fed. R. Civ. P. 55 and Local Rule DU CivR 77-2(a)(6)[1]," "that the Clerk enter a default judgment in favor of Plaintiff." (ECF No. 18 at 1.) The Clerk did not enter a default judgment.

On July 10, 2018, the Defendants filed a late Answer to the Complaint.[2] (*See* ECF No. 20.) On August 15, 2018, the Chief Deputy Clerk entered an order denying "Plaintiff's Application and Request for Entry of Default," finding "there [was] not prejudice to Plaintiff as a result of the delay," and noting that "courts prefer to resolve disputes on the merits." (ECF No. 24.)

On October 9, 2018, Plaintiff filed a Motion to Recuse the undersigned. (ECF No. 29.) On October 23, 2018, Defendants filed an Opposition to this Motion. (ECF No. 31.) On November 6, 2018, Plaintiff filed its Reply. (ECF No. 31.) On November 7, 2018, the court referred Plaintiff's Motion to Chief Judge Shelby. On or around November 26, Chief Judge Robert Shelby recused. On November 26, 2018, the court referred Plaintiff's Motion to Judge Kimball. (ECF No. 36.) On January 24, 2019, Judge Kimball entered an order denying Plaintiff's Motion. (ECF No. 38.)

On January 28, 2019, Plaintiff filed the Motion currently before the court—the Motion to

---

[1] DU CivR 77-2(a)(6) formerly provided that "[t]he clerk of court is authorized to grant . . . entry of default and judgment by default as provided for in Fed. R. Civ. P. 55(a) and 55(b)(1) . . . ."

[2] John Hancock did not file the Answer. He never entered a notice of appearance in this case.

3

Strike Defendants' Answer, Set Aside Denial of Default, and Enter Default Judgment. (ECF No. 39.) On February 11, 2019, the Defendants responded. (ECF No. 40.)

On February 13, 2019, four pro se proposed intervenors filed a "Motion for Leave to Intervene." (ECF No. 43.) On February 27, 2019, Defendants filed an Opposition to this submission. (ECF No. 46.) Plaintiff also filed an Opposition to this submission. (ECF No. 45.)

Analysis

I.   Rule 6(b)(1)(B)

Rule 12(a) provides that "[a] defendant must serve an answer . . . within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(ii). Plaintiff argues, and Defendants do not dispute, that under Rule 12(a), "Defendants submitted their Answer 42 days after their filing deadline . . . ." (*See* ECF No. 39 at 3.) Plaintiff further argues that under Rule 6(b)(1)(B), "Defendants' Answer must be stricken for failure to file a Motion for an Extension of Time and failure to make a showing of excusable neglect." (ECF No. 39 at 2.) Rule 6(b) provides, in relevant part, that "[w]hen an act . . . must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Plaintiff argues that because Defendants filed their Answer after the Rule 12(a) twenty-one day period expired, Defendants must satisfy Rule 6(b) in order to enlarge the time allowed for filing an answer.

As an initial matter, the court must determine whether Rule 6(b)(1)(B) applies to Rule 12(a). The Tenth Circuit, in an unpublished decision, has made statements to suggest that it does not. In *Lewis v. JPMorgan Chase Bank, Nat. Ass'n*, the appellant, citing "Federal Rule of Civil Procedure 6(b)(2)," "argue[d] that there was no excusable neglect for [her opponent's] untimely

request for extensions." 606 F. App'x 896, 898 n. 3 (10th Cir. 2015). Responding to this argument, the panel in *Lewis* stated that "Rule 6(b)(2) does not, however, apply to an answer to a complaint or to a motion to dismiss. In any event, we agree with the district court that there was good cause for an extension." *Id*.

At least one district court appears to have taken a similar position. *See McBride v. U.S. Bank Home Mortg.*, No. 3:15-CV-36, 2015 WL 4477801, at *1 (N.D.W. Va. July 22, 2015) ("[C]ourts may extend the answer deadline. Rule 12(a) governs this deadline. Rule 6(b) prohibits courts from extending deadlines under several rules, *but not Rule 12(a)*." (emphasis added)).

But most courts to have considered the issue have applied Rule 6(b) to Rule 12(a). *See Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 558 (7th Cir. 1996) ("Under Rule 6(b), after the Rule 12(a) twenty-day period expires, the time period for responding to a complaint may be enlarged only upon motion of the defendant and a showing of excusable neglect. Fed.R.Civ.P. 6(b)."); *Tolliver v. Liberty Mut. Fire Ins. Co.*, No. 2:06-CV-00904, 2008 WL 545018, at *1 (S.D. Ohio Feb. 25, 2008) ("Rule 6(b) permits an enlargement of the time allowed for filing an answer under Rule 12(a) upon a showing of excusable neglect if the request for an extension comes after the expiration of the specified time period."); *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 122 (D. Mass. 2001) ("Rule 12(a)(1)(A), Fed.R.Civ.P., allows a party 20 days after being served with the summons and complaint to file an answer. Rule 6(b)(1), Fed.R.Civ.P., permits a party to file a motion to extend the time period for filing an answer within the time frame of the 20 day period.").

Rule 6 provides, in relevant part, that "[w]hen an act . . . *must* be done, the court may, for good cause, extend the time . . . ." Fed. R. Civ. P. 6(b)(1) (emphasis added). Rule 12(a) provides,

in relevant part, that "[a] defendant *must* serve an answer . . . within 21 days after being served . . . ." Fed. R. Civ. P. 12(a)(1)(A)(i) (emphasis added). Based on the plain meaning of these rules, read together, and the prevailing view among courts, this court holds that Rule 6(b) applies to Rule 12(a). The court now turns to Plaintiff's argument.

Plaintiff argues that because "Defendants never filed a motion for an extension," "this Court does not have the discretion to entertain Defendants' late Answer . . . . " (ECF No. 39 at 3–4.) Plaintiff relies on the Supreme Court's decision in *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990).

In *Lujan*, the District Court "issued an order directing respondent to file 'a supplemental memorandum regarding the issue of its standing to proceed.'" *Lujan*, 497 U.S. at 894–95. The respondent "submitted" "additional affidavits" that constituted "new evidentiary materials" that the District Court's order "plainly did not call for." *Id*. at 895. "The only explanation for the submission . . . was contained in a footnote to the memorandum . . . ." *Id*. "[T]he District Court rejected the additional affidavits as 'untimely and in violation of' the court's briefing 'Order.'" *Id*. The Court of Appeals reversed, holding that the District Court abused its discretion "not to consider the . . . additional affidavits . . . ." *Id*. at 881.

The Supreme Court then reversed the Court of Appeals, holding that "[t]he District Court did not abuse its discretion in declining to admit them." *See id*. at 894. The Supreme Court agreed with the District Court that the respondent's "evidentiary submission was . . . untimely, both under Rule 56 . . . and under Rule 6(d) . . . ." *Id*.

The Supreme Court noted that "Rule 6(b) [3] sets out the proper approach in the case of late filings . . . ." *Id*. Pursuant to Rule 6(b), "any *post*deadline extension must be 'upon motion made,' and is permissible only where the failure to meet the deadline 'was the result of excusable neglect.'" *Id*. at 896 (emphasis in original). The majority in *Lujan* noted that "in order to receive the affidavits," the "District Court would have had to regard the very filing of the late document as the 'motion made' to file it . . . ." *Id*. The majority held that the "footnote in respondent's reply memorandum to the District Court" was not a "motion" within the meaning of Rule 6(b)(2)

---

[3] "*Lujan* was decided in 1990, and in 2007 Rule 6(b) was amended as part of the general restyling of the Rules to make them more easily understood. The changes were intended to be stylistic only. Fed.R.Civ.P. 6(b) advisory committee's note. At the time of *Lujan,* the text of Rule 6(b) read:"

> [ (b) Enlargement.] When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion
>
> (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or
>
> (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect[.]

*Drippe v. Tobelinski*, 604 F.3d 778, 784 (3d Cir. 2010) (citations omitted).

The text of the rule presently reads:

> (b) Extending Time.
>
> (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed. R. Civ. P. 6(b)(1). "The amendment does not alter the request-motion dichotomy, and the rule remains substantively the same as when addressed by *Lujan*." *Drippe*, 604 F.3d at 784.

. . . ." *Id*. at 897 n. 5. The majority further provided that a "postdeadline 'request,' to be even *permissibly* treated as a 'motion,' must contain a high degree of formality and precision, putting the opposing party on notice that a [filing] is at issue and that he therefore ought to respond." *Id*. at 897 n. 5. "The request [to the District Court in *Lujan*] had not much of either characteristic." *Id*. "As for formality, it was not even made in a separate filing or in a separate appearance before the court, but was contained in a single sentence at the end of the first paragraph of one of the 18 single-spaced footnotes in a 20–page memorandum of law." *Id*. The majority further provided that they thought "it quite impossible to agree with the dissent that the district judge not only *might* treat this request as a motion, but that he was compelled to do so." *Id*. (emphasis in original). The majority ultimately held that "the proposition that [the district court] was *compelled* to receive [the affidavits]—that it was an abuse of discretion to *reject* them—cannot be accepted." *Id*. at 898 (emphasis in original).

Defendants argue that "Courts treat responses to Motions to strike as motions for extension of time under Rule 6(b) of the Federal Rules of Civil Procedure." (ECF No. 40 at 5–6.) The question is therefore whether this court may treat Defendant's Opposition as a "motion" under Rule 6(b) in light of *Lujan*.

In answering this question, it is important to consider *Lujan* together with relevant Tenth Circuit precedent. The Tenth Circuit has provided that Rule 6(b)(1) "should be liberally construed to advance the goal of trying each case on the merits." *Rachel v. Troutt*, 820 F.3d 390, 394 (10th Cir. 2016). Courts within this District have specifically noted that this reasoning applies to Rule 6(b)(1)(B). *See Strong v. Cochran*, No. 2:14-CV-00788-TC-EJF, 2018 WL

4080898, at *1 (D. Utah Aug. 27, 2018).[4] Other district courts have also applied this reasoning to Rule 6(b)(1)(B). *See Heath v. Google Inc.*, No. 15-CV-01824-BLF, 2016 WL 4729300, at *2 (N.D. Cal. Sept. 12, 2016) (Rule 6(b)(1)(B) "like all the Federal Rules of Civil Procedure, is to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits." (quoting *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010))).

Construing Rule 6(b)(1)(B) liberally, "to advance the goal of trying" this case "on the merits," *Rachel v. Troutt*, 820 F.3d at 394, the court holds that the Defendants' Opposition, (ECF No. 40) may be considered a "motion" under Rule 6(b)(1)(B). Unlike the request contained in the footnote in *Lujan*, Defendants' Opposition "contains a high degree of formality and precision." *Lujan*, 497 U.S. at 897 n. 5. Defendants have made arguments for an extension under Rule 6(b). Plaintiff, in its Reply, has been given an opportunity to respond to these arguments. (*See* ECF No. 44 at 5–9.) The court holds that Defendants' Opposition may be "permissibly treated as a 'motion.'" *Lujan*, 497 U.S. at 897 n.5. As Defendants note, this court is not the first reach this conclusion. *See Sartori v. Steider & Assocs., P.C.*, No. 15CV991 JCH-LF, 2016 WL 9774944, at *2 (D.N.M. June 30, 2016) (construing the defendants' response to a motion to strike to be in compliance with *Lujan* because it was "both formal and precise," and "adequately notified" the plaintiff "to respond to their arguments of excusable neglect.").

Plaintiff relies on *Smith v. D.C.*, 430 F.3d 450, 457 (D.C. Cir. 2005) to support its argument that this court "does not have the discretion to entertain Defendants' late Answer . . . ."

---

[4] *Strong v. Cochran*, 2018 WL 4080898 at *1 ("A court may extend a filing deadline 'on motion made after the time has expired if the party failed to act because of excusable neglect.' Fed. R. Civ. P. 6(b)(1)(B). 'This rule should be liberally construed to advance the goal of trying each case on the merits.'" (quoting Rachel v. Troutt, 820 F.3d 390, 394 (10th Cir. 2016)).)

(ECF No. 39 at 3–4.) In *Smith*, the D.C. Circuit, citing *Lujan*, held that the district court "abused its discretion by granting the [defendant's] late motion for summary judgment . . . ." *See Smith*, 430 F.3d at 452, 457. But in *Smith*, the defendant "never moved for an extension of the deadline" for filing summary judgment motions. *Id*. at 456. Moreover, "the district court granted the late [summary judgment] motion *without discussing* the lack of a request for an extension." *Id*. (emphasis added). Because the court treats Defendants' Opposition as a "motion" under Rule 6(b)(1), Plaintiff's reliance on *Smith* is misplaced. The court now considers whether Defendants' reasons for the late filing of the Answer satisfy Rule 6(b)(1)(B)'s excusable neglect standard.

Defendants argue that "the delay in filing the Answer is excusable." (ECF No. 40 at 5.) In contrast, Plaintiff argues that "[e]ven if Defendants had filed a motion for an extension of time, Defendants' failure to make a showing of excusable neglect precludes the Court from entertaining the Answer." (ECF No. 44 at 5.) As Plaintiff notes, Defendants rely primarily on *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) to support their argument regarding excusable neglect. (*See* ECF No. 40 at 6.)

In *Pioneer*, "the seminal case on excusable neglect," the Supreme Court explained "that 'although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect, it is clear that excusable neglect under Rule 6(b) is a somewhat 'elastic concept' and is not strictly limited to omissions caused by circumstances beyond the control of the movant.'" *Shifers v. Arapahoe Motors, Inc.*, No. 17-CV-01753-CMA-KLM, 2018 WL 6620866, at *3 (D. Colo. Dec. 18, 2018) (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 392 (1993)). "The Court further directed that in determining where neglect is excusable, a court must take into account 'all relevant circumstances surrounding the

party's omission.'" *Id.* (quoting *Pioneer*, 507 U.S. at 395). "These include four relevant factors: (1) 'the danger of prejudice' to the nonmoving party; (2) 'the length of the delay and its potential impact on judicial proceedings', (3) 'the reason for the delay, including whether it was within reasonable control of the movant', and (4) 'whether the movant acted in good faith.'" *Id.* (citation omitted). "Though the Supreme Court's discussion of excusable neglect in *Pioneer* concerned Bankruptcy Rule 9006(b)(1) . . . its analysis 'rested on the plain meaning of the terms.'" *Id.* (quoting *City of Chanute, Kan. v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994)). "Accordingly, the Court of Appeals for the Tenth Circuit has extended the *Pioneer* standard of excusable neglect to motions arising under . . . Federal Rule of Civil Procedure 6(b) . . . ." *Id.* (citations omitted).

1. <u>The Danger of Prejudice</u>

Plaintiff argues that "this case is in desperate need of resolution because it deals with water which is the Tribe's most precious resource due to the dry and arid location of the Tribe's reservation," and argues that 'unnecessary delays in the disposition of this case cause prejudice to the Tribe." (ECF No. 39 at 6–7.) Defendants respond that "the water at issue in this case . . . is a small drop in the Tribe's overall proverbial water bucket," and argue that the Tribe's "dire implication about not having adequate water resources is vastly overstated." (ECF No. 40 at 7.) "On the flip side," Defendants argue that "if the Tribe is able to obtain an order from this Court enforcing the Tribal Court's order, Defendants' farming operation will be effectively shut down and Defendants put out of business." (ECF No. 40 at 7.) In Reply, Plaintiff states that it "has a strong interest in protecting in protecting its most precious resource, water." (ECF No. 44 at 13.) But Plaintiff did not specifically respond to Defendants' argument that the total amount of water

11

at issue is small percentage of the Tribe's total water supply. Because Plaintiff did not respond to this argument, the court assumes the amount of water at issue is a relatively small percentage of Plaintiff's total water supply.

The court finds that this factor weighs in Defendants' favor. This finding is buttressed by the fact that much of the delay in this case was caused by Plaintiff.

2. Length of the Delay and Impact on Judicial Proceedings

"The Tribe's original complaint," against Defendants in tribal court "was filed on September 6, 2012 . . . ." (ECF No. 2-3 at 29.) On September 29, 2015 the Ute Indian Tribal Court entered a Final Judgment for Damages and Permanent Injunction. (*See* ECF No. 2-3 at 57.) Plaintiff filed its Complaint in this court on April 16, 2018. (ECF No. 2.) Thus, the time between the filing of the original complaint in Tribal Court and the filing of the complaint in this court was thus 2,048 days. As noted above, the delay caused by Defendants' late filing of the Answer was 42 days.

"[C]ourts have generally found" a delay of "a little over one month to favor the party seeking leave to file out of time." *Clinical Reference Lab., Inc. v. Salugen Biosciences, Inc.*, No. CIV.A. 12-2768-KHV, 2013 WL 1816352, at *3 (D. Kan. Apr. 29, 2013) (citing *Welch v. Centex Home Equity Co.,* No. 03–2132–JWL–DJW, 2004 WL 2348295, at *1 (D. Kan. Apr. 23, 2004) for the proposition that a "two month delay between original answer deadline and plaintiff's request for leave to file answer out of time 'relatively innocuous.'"). When considered in the context of this case's history, the 42 day delay is not substantial. This factor weighs in Defendants' favor.

at issue is small percentage of the Tribe's total water supply. Because Plaintiff did not respond to this argument, the court assumes the amount of water at issue is a relatively small percentage of Plaintiff's total water supply.

The court finds that this factor weighs in Defendants' favor. This finding is buttressed by the fact that much of the delay in this case was caused by Plaintiff.

2. Length of the Delay and Impact on Judicial Proceedings

"The Tribe's original complaint," against Defendants in tribal court "was filed on September 6, 2012 . . . ." (ECF No. 2-3 at 29.) On September 29, 2015 the Ute Indian Tribal Court entered a Final Judgment for Damages and Permanent Injunction. (*See* ECF No. 2-3 at 57.) Plaintiff filed its Complaint in this court on April 16, 2018. (ECF No. 2.) Thus, the time between the filing of the original complaint in Tribal Court and the filing of the complaint in this court was thus 2,048 days. As noted above, the delay caused by Defendants' late filing of the Answer was 42 days.

"[C]ourts have generally found" a delay of "a little over one month to favor the party seeking leave to file out of time." *Clinical Reference Lab., Inc. v. Salugen Biosciences, Inc.*, No. CIV.A. 12-2768-KHV, 2013 WL 1816352, at *3 (D. Kan. Apr. 29, 2013) (citing *Welch v. Centex Home Equity Co.,* No. 03–2132–JWL–DJW, 2004 WL 2348295, at *1 (D. Kan. Apr. 23, 2004) for the proposition that a "two month delay between original answer deadline and plaintiff's request for leave to file answer out of time 'relatively innocuous.'"). When considered in the context of this case's history, the 42 day delay is not substantial. This factor weighs in Defendants' favor.

3. <u>The Reason for the Delay</u>

Defendants argue that they "had good reason for the delay in filing the Answer." (ECF No. 40 at 8.) They argue:

> [d]ue to Defendants' financial condition as a small farming operation, Defendants earnestly sought to figure out how they would fund the defense in this litigation. They met with prior counsel, Mr. Hancock, who instructed them to find other counsel. In helping them find other counsel, Mr. Hancock reached out to the Tribe shortly after the Complaint was filed to get an extension for Defendants to respond to the Complaint, which the Tribe agreed to, but later decided not to honor. Once Defendants retained counsel, the Answer was filed the next day.

(ECF No. 40 at 8.) Here, Defendants refer to an email that was sent from Plaintiff's counsel to Defendants' prior counsel, Mr. Hancock. (*See* ECF No. 40 at 19.) In that May 24, 2018, email, Plaintiff's counsel wrote, in relevant part, that "The Tribe agrees to a 30-day extension of time from May 29 for the defendants' response. I look forward to working with you." (ECF No. 40 at 19.) The next day, on May 25, 2019, Plaintiff's counsel then wrote another email to Mr. Hancock, writing:

> I received a call today from another lawyer saying the . . . defendants were considering having him represent them, but they had not yet reached him. He also asked for any extension. I told him we could not enter into such an agreement with anyone other than counsel of record.
>
> When we spoke yesterday, I understood that the . . . defendants had retained you, and we agreed to the 30-day extension on that basis. The call I received yesterday calls that understanding into question. Again, we cannot agree to an extension with a lawyer whom the defendants are merely *considering* retaining, but only one they have actually retained and who appears as counsel of record. Accordingly, if you have been retained, please enter your appearance before the deadline for the defendants' deadline for responding to the complaint. If you have filed your entry of appearance by that time, we will of course honor our extension agreement. If you have not entered your appearance by then, we will proceed with the case and will, if we deem it appropriate, seek entry of default.

(ECF No. 40 at 18.)

The May 25, 2018 email was sent four days prior to the May 29, 2018 answer deadline. Plaintiff's extension of the deadline—which existed during a short one day window—is not a good reason for the delay. This factor weighs in Plaintiff's favor.

4. Good Faith

Defendants argue that they "acted in good faith to earnestly seek to retain counsel, seek funding, and to reach out to the Tribe to request an extension of time to respond to the Complaint." (ECF No. 40 at 8.) Plaintiff appears to argue that this does not constitute good faith because "Defendants fail[ed] to file a motion for extension of time," and "did not contact the Tribe themselves for an agreement for an extension of time." (ECF No. 44 at 7.)

"[T]he determination" of what constitutes "excusable neglect" "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 381. This case is unique because Plaintiff has moved to strike Defendants' Answer approximately seven months after it was filed. In that time, Defendants filed an Opposition to the Motion to Intervene, (ECF No. 46), an Opposition to the Motion to Strike, (ECF No. 40) and an Opposition to the Motion to Disqualify, (ECF No. 31).

Since filing their Answer, Defendants have timely filed three oppositions to various motions. Defendants represent that they have "incurred substantial attorney fees" as a result of this case activity. (ECF No. 40 at 4.) Defendants actions since filing their Answer support their position that they acted in good faith when they failed to timely file the Answer. This factor weighs in Defendants' favor.

Three of the four factors weigh in Defendants' favor. The court finds that Defendants have shown excusable neglect. The court finds good cause exists to permit Defendants' late

filing. The court therefore DENIES Plaintiff's Motion to Strike Defendants' Answer. The court permits Defendants' late Answer under Rule 6(b)(1)(B).

II. Plaintiff's Argument Regarding Default and Default Judgment

Plaintiff argues that the Clerk's "order denying application and request for entry of default must be set aside." (ECF No. 44 at 9.) And Plaintiff argues that the court should grant the Tribe's Motion for Default Judgment.

"Entry of a default judgment involves a two-step process." *Meyers v. Pfizer, Inc.*, 581 F. App'x 708, 710 (10th Cir. 2014) (citing Fed.R.Civ.P. 55(a)-(b)). First, a party must obtain an entry of default from the Clerk of Court. Fed.R.Civ.P. 55(a)). Then, the party must either seek default judgment from the Clerk where the claim is for "a sum certain or a sum that can be made certain by computation," or "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1)-(2).

But "[t]he preferred disposition of any case is upon its merits and not by default judgment." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) (citation omitted). Because the court permits the late filing under Rule 6(b)(1)(B), Plaintiff's request for entry of default judgment is MOOT. *C.f. Scott v. Power Plant Maint. Specialists, Inc.*, No. 09-CV-2591-KHV, 2010 WL 1881058, at *4 (D. Kan. May 10, 2010) ("Because the Court sustains plaintiff's motion for leave to file an amended answer, plaintiff's motions for default are effectively moot."); *see also Harris v. City of Kansas City*, No. 18-CV-2084-JAR-GEB, 2018 WL 3934040, at *3 (D. Kan. Aug. 16, 2018) ("Because the Court finds that Defendant has met the required showing of 'excusable neglect' for failing to timely answer, the Court concludes that Defendant meets the 'good cause' standard required under Rule 55(c)."). In other words, even if this court were to

decide that the Clerk should have entered default, it would nevertheless set aside the entry of default because Defendants have appeared, and because of the Tenth Circuit's clear preference for resolving cases on the merits.

Additionally, the court agrees with Defendants' cited authority that "where a party has filed an answer prior to the entry of default . . . it would be improper for the court to enter default." *Magnusson v. Ocwen Loan Servicing, LLC*, No. 2:14-CV-161-DN-DBP, 2014 WL 4185672, at *2 (D. Utah Aug. 21, 2014).

<u>Conclusion</u>

For the reasons stated, Plaintiff's Motion, (ECF No. 39) is DENIED. But Defendants are warned that any further delay on their part could result in sanctions.

DATED this 1st day of May, 2019.

BY THE COURT:

CLARK WADDOUPS
United States District Judge